## In re ESTES.

### Ex parte McARTHUR et al.

District Court, W. D. South Carolina.
Aug. 1, 1921.

Butler & Hall, of Gaffney, S. C., for petitioners.

WATKINS, District Judge.

This matter comes before me on certificates of G. W. Speer, one of the referees in bankruptcy of this court, with petitions for review and prayers for revision of the order of the referee wherein he held that two funds arising from the sale of real estate, over which petitioners held mortgage liens, were properly chargeable, along with the general fund in the hands of the trustee arising from the sale of the personal property of the bankrupt, with all costs and expenses, including the commissions of the referee and trustee, and that same be prorated to the funds so that each fund should contribute proportionately to the total sum of such costs, expenses, and commissions. Petitioners also complain of the action of the referee in charging the taxes due on said real estate at the time of the adjudication against the funds arising from the sale thereof.

There is now in the hands of the trustee a fund of $753.10 arising from the sale of personal property of the bankrupt and subject to distribution amongst the unsecured creditors. Under order of this court heretofore passed in this matter, a tract of land of 137 acres, over which E. C. McArthur, one of the petitioners herein, held a purchase money mortgage antedating bankruptcy and given by the bankrupt, aggregating $10,466.-44, was sold by the trustee and bought in at the sale by the lienholder for $10,100, being $336.04 less than sufficient to satisfy his lien. Also under like order the home place of the bankrupt, over which Sallie D. Young, the other petitioner herein, held a lien secured by mortgage antedating the bankruptcy, aggregating $5,554.35, was sold by the trustee, and bid in by the lienholder for $4,600, being $954.35 less than the amount of her lien. The presence of these lienholders in this proceeding was voluntary and their rights were uncontested, they having by petition asked this court to sell said real estate free from liens. No money to cover these transactions has been paid in to the trustee, nor has the referee been asked to credit the claims of the lienholders with the respective amounts realized from the sale above referred to. The referee has apportioned to the general fund in the hands of the trustee as its proportion of costs, expenses, and commissions the sum of $154.15 which includes $109.52 taxes due by bankrupt on personalty, to the fund arising from the sale of the McArthur place the sum of $486.12 which includes $49.39 taxes due on that tract of land, and to the fund arising from the sale of the home place the sum of $286.97 which includes $63.27 taxes assessed against that place.

The questions involved are: (1) Whether the funds arising from the sale of the mortgaged real estate should contribute pro rata to the general expenses of administration. (2) Whether the funds arising from the sale of each separate parcel of real estate should bear the whole or any part of the taxes assessed against such lot or parcel, there being sufficient funds from the sale of

unencumbered personalty to pay all taxes. (3) Should the fund arising from the sale of the real estate be chargeable pro rata with commissions of trustee and referee.

1. This question will have to be answered in the negative. If such lien creditors should participate in the distribution of the general fund for any deficiency upon their claims after applying the proceeds of the mortgaged property, they would, of course, as to such deficiency come in the same general class with the general creditors.

In the case of Mills v. Virginia-Carolina Lumber Company, 164 F. 168, 21 L. R. A. (N. S.) 901 (C. C. A. 4th Cr.), it was held: "A mortgage creditor of a bankrupt, who proves his claim solely for the purpose of enforcing his lien on the proceeds of the mortgaged property, which has been sold by the trustee, does not thereby become liable for his proportionate share of the costs of the general administration."

In re Williams' Estate, 156 F. 934, 939 (C. C. A. 9th Cr.), the court said: "By coming into the bankruptcy court, therefore, the holder of a valid lien upon the estate of a bankrupt comes into an appropriate place and into a court amply able to enforce and protect his rights. * * * The enforcement of his lien in another court would entail upon the proceeds of the property upon which the lien exists the payment of the appropriate court costs; and so, in the enforcement of such lien in a court of bankruptcy, the proceeds of the property of the bankrupt upon which such lien exists is properly chargeable with the costs of such court appropriate to such enforcement, but with no other or further costs. They are not chargeable with the general costs of the administration of the bankrupt's estate, such as the services of a receiver in carrying on the business of the bankrupt, the expenses and losses of such business, the fees of the attorney for such receiver, the general fees of the trustee and those of his attorney."

2. The liability for taxes must be determined by the law of the state unless in conflict with some federal law or decision of the Supreme Court. While it is true that taxes assessed upon real estate constitute a first lien thereon, it is nevertheless true that the prior liability for the payment of these taxes rests upon the personalty of the owner, if sufficient. Without reviewing the various statutes relating to this subject, it is sufficient to refer to the cases of Ebaugh v. Mullinax, 34 S. C. 364, 13 S. E. 613, Interstate

Building & Loan Association v. Waters, 50 S. C. 459, 27 S. E. 948, and Taylor v. Strauss, 95 S. C. 295, 78 S. E. 883. These cases specifically hold that, before the lands of the defaulting taxpayer can be legally sold for the nonpayment of the taxes assessed thereon, there must be an unsuccessful effort made to enforce by distress and sale of the personal property of the defaulting taxpayer. As an evidence of the intention of the Legislature, the form of execution prescribed by the statute itself requires that the personalty be first exhausted. Such being the case, and there being sufficient funds with which to pay these taxes in full, the whole amount of the taxes including that upon the realty, as well as the personalty, should herein be charged against the general fund.

3. The decisions of the courts upon the question of commissions to be paid the trustee and referee on the sale of mortgaged property are by no means harmonious. Quite a number of these decisions, however, were handed down before the amendment of 1910 to section 48 of the Bankruptcy Act. Perhaps the principal case decided since that amendment is that of Gugel v. New Orleans Nat. Bank, 239 F. 676 (C. C. A. 5th Cr.). The reasoning in that case seems to be somewhat contradictory. In one section of the opinion it is based upon the idea that although it is provided by statute that commissions shall be paid, there being no direction as to how these commissions shall be paid, the court is without right to charge such against the funds arising from the sale of the mortgaged real estate, as this would reduce the security of the lienee. In another section, it is held that it was proper to charge against this fund what would have been reasonable costs and expenses of foreclosure in the state court.

In Remington on Bankruptcy, vol. 2, § 1996, at p. 1919, the following is found:

"Before the Amendment of 1910 there was a line of cases which denied commissions to the referee and trustee out of the fund until after the lien had been satisfied in full except where the lien was disputed or the lienholder himself had invoked the aid of the bankruptcy court; but such ruling was to be criticised on the ground that it threw the peril of realizing upon encumbered property in bankruptcy (and most property in bankruptcy is encumbered) upon the trustee, virtually paralyzing his efforts and compelling him to perform services and to incur expenses at his own risk, even though he acted in

the best faith. Such rule cannot be right in principle and necessarily must be unsound on analysis. The enunciation of the rule occurred usually in cases where there had been an abuse of discretion in ordering a sale clear and free of liens when there should have been an abandonment or a sale subject to liens; but it is submitted that since that abuse of discretion was the real wrong perpetrated the correction should have been applied to such abuse—properly the order of sale should have been reviewed, or, perhaps, in extreme cases, the commissions of the referee or trustee, if in collusion, might be withheld for abuse of discretion and of the process of the court.

"It was held in one case that the Amendment, however, is not applicable to cases where the property brings 'largely less' than the concededly valid encumbrances, on the doctrine that such deficiency was itself prima ·facie proof that the bankruptcy court had not 'rightfully exercised its jurisdiction to sell free from liens; but it would seem that the objection to such sale should have been made by the lienholder at the outset, when first summoned into court, and that his failure to object before the sale was itself rather prima facie proof, or at any rate an admission by the lienholder, that the sufficiency or insufficiency of the price likely to be obtained was so entirely unknown and unascertainable that it would be a proper exercise of the bankruptcy court's jurisdiction to order a sale. Manifestly the proper time to object to the exercise of the jurisdiction to sell free of liens is the time such a sale is ordered; and the fact that the underlying motive of the trustee was not to protect the property for lienholders but rather to enable creditors to get any possible surplus, is not the test of the propriety of the charge."

Section 48a of the Bankruptcy Act, as amended June 25, 1910, 11 USCA § 76 (a), provides in part as follows: "Trustees shall receive for their services, payable after they are rendered, a fee of $5 deposited with the clerk at the time the petition is filed in each case, except when a fee is not required from a voluntary bankrupt, and such commissions on all moneys disbursed or turned over to any person, including lien holders, by them, as may be allowed by the courts, not to exceed 6 per centum on the first $500 or less, 4 per centum on moneys in excess of $500 and less than $1,500."

Section 40a of the Bankruptcy Act, 11 USCA § 68 (a), relating to compensation of referees, provides in part as follows: "Ref-

erees shall receive as full compensation for their services, payable after they are rendered, a fee of $15 deposited with the clerk at the time the petition is filed in each case, except where a fee is not required from a voluntary bankrupt, and 25 cents for every proof of claim filed for allowance, to be paid from the estate, if any, as a part of the cost of administration, and from estates which have been administered before them 1 per centum commissions on all moneys disbursed to creditors by the trustee."

Section 72 of said act (11 USCA § 112), reads as follows: "Neither the referee, receiver, marshal, nor trustee shall in any form or guise receive, nor shall the court allow him, any other or further compensation for his services than that expressly authorized and prescribed in this title."

■■■■ The sections quoted above provide for the compensation of referees and trustees, and the last section confines that compensation strictly to that provided in the act. We take the view that, since the commissions are directed by statute to be paid, it is for the court to determine upon the equity of each case how the costs should be apportioned. In this case, there is nothing before me to indicate that the mortgaged property was hopelessly insufficient to pay the liens. On the contrary, the fact that it was decided by all the parties that it should be sold through the bankrupt court indicates that there was hope that there would be a surplus. Certain it is that the property was sold with the consent and approval both of the general creditors and of the lienholders. This sale entailed considerable expense in the way of commissions and cost of advertising. The lien creditors preferred to discontinue the foreclosure proceedings in the state court and take advantage of the services of the trustee to sell the property free from lien in the bankruptcy court. Their doing so indicates that, either in the way of procuring a speedy sale or in order to save expense, or both, they were willing to make use of the trustee, and that they did obtain the benefit of his services. It would be inequitable to charge the general fund, which received no benefit from said ·sale, with an expense incurred at the request of and by the consent of lien creditors, and for services of which they obtained the exclusive benefit. The funds arising, therefore, from the sale of the real estate should be charged with their pro rata share of the commissions and of advertising. It appears from the report of the trustee and the certificate of the referee that the following is a state-

ment of the receipts and also of charges, costs, and expenses:

Receipts—

| | |
|---|---|
| Sale of personal property | $  733.10 |
| Sale of home place | 4,600.00 |
| Sale of McArthur place | 10,100.00 |
| Total receipts | $15,453.10 |

Costs, expenses, commissions, etc.—

| | |
|---|---|
| Trustee's commission | $294.53 |
| Referee's commission | 154.53 |
| General expense | 200.00 |
| Advertising— | |
| Real estate | 25.00 |
| Personalty | 13.00 |
| Taxes— | |
| McArthur place | 49.39 |
| Personalty | 109.52 |
| Home place | 63.27 |
| Total | $909.24 |

In accordance with the views hereinabove expressed, these sums should be paid as follows:

Out of the personalty

| | |
|---|---|
| General expense | $200.00 |
| Taxes | 222.18 |
| Advertising personalty | 13.00 |
| Proportionate part of commissions of referee and trustee | 21.88 |
| Total | $457.06 |

Out of the proceeds of sale of home place to Mrs. Young—and covered by her mortgage

| | |
|---|---|
| Proportionate part of commissions of referee and trustee | $133.67 |
| One half of advertising real estate | 12.50 |
| | $146.17 |

Out of the proceeds of sale of the McArthur place covered by McArthur mortgage

| | |
|---|---|
| | $293.51 |
| Proportionate part of commissions of referee and trustee | $293.51 |
| ½ of advertising | 12.50 |
| | $306.01 |

And it is so ordered.