## In re GLENN.

No. 1372.

District Court, W. D. South Carolina.

Aug. 5, 1932.

Carlisle, Brown & Carlisle, of Spartanburg, S. C., for bankrupt.

Samuel R. Watt, of Spartanburg, S. C., for trustee.

Osborne & Butler, Lyles & Daniel, Perrin & Tinsley, H. E. DePass, Jr., Jesse W. Boyd, and Nicholls, Wyche & Russell, all of Spartanburg, S. C., for the various creditors.

596

WATKINS, District Judge.

## Statement of Facts.

At the time of the adjudication of William Simpson Glenn, Sr., as a bankrupt, he was possessed of a large amount of real estate, a considerable portion of which was encumbered by mortgages and other liens, other portions being unencumbered, and all of these lands have now been transferred by the adjudication to the trustee, subject to administration by this court. Petitions were filed, both by the trustee and a number of the mortgage creditors, who were interested in various parcels of the property, praying for a sale of the real estate for the purposes of administration, the sale of the encumbered property to be made free from liens. Other petitions were filed requesting disclaimers as to alleged burdensome property, and some lienholders have challenged by their returns the jurisdiction of this court to sell the real estate free from liens or subject thereto, so as to give, by the trustee's deed, a good title. All the petitions relating to the sale of the real estate were addressed to me, and a reference was made to H. E. DePass, Esq., referee in bankruptcy, to ascertain and report the facts and his conclusions of law with respect to all matters connected with the petitions and returns. He has filed with the court an elaborate, comprehensive and able report, embracing thirty-six typewritten pages, setting out his conclusions both of law and of fact. To this report various exceptions have been filed in connection with petitions to review the same. The exceptions and petitions are embraced in the record, and it will be unnecessary to recapitulate them here. The points involved will be considered and disposed of in order in the subsequent discussion herein.

After filing the report, some question arose as to the omission therefrom of certain advances made for the payment of insurance premiums, and a supplemental statement was filed by the referee from which it appears that advances in the aggregate sum of $89 had been made by Mr. R. Gantt Jervey on the property covered by his mortgage for the payment of insurance premiums. It appears that this is a just claim and should be added to his lien debt, as shown by the referee's report, and it is so ordered.

The trustee also excepts to the inclusion in the order of sale in this proceeding of the real estate covered by the mortgages designated as the Gantt and Memminger mortgages. In view of the decision of the referee, which must be confirmed, that the liens upon these parcels had expired prior to the filing of the petition in bankruptcy and the adjudication, the trustee's contention must be sustained and these parcels sold as unencumbered property. In all other respects the report of the referee will be confirmed and approved.

At the hearing before the referee, among the various contentions overruled by him, appeared the following:

1. That a court of bankruptcy is without jurisdiction to foreclose mortgages of real estate or to sell property free from lien, so as to bar the wife's right of dower in property in which she has renounced dower in favor of the mortgagee.

2. That the Gantt and Memminger mortgages, the liens of which were determined by the referee to have expired, still constitute valid liens upon the property.

3. That the costs, fees, and expenses of the sale of all encumbered property should be charged first against the proceeds of the sale of each specific parcel and not against the general fund. The referee recommended that, under the circumstances disclosed by the evidence, these expenses should be charged first against the general fund, if sufficient.

## Conclusions of Law.

1. Upon the question of the general powers of a bankruptcy court, sitting as a court of equity, to sell property free from liens, and thereby bar the wife's right of dower in all property in which she has renounced dower in favor of a mortgagee, the referee's statement of the law is so full and convincing as to require no further discussion. While bankruptcy courts are not in specific terms empowered to foreclose mortgages, in the sense in which that expression is sometimes technically employed, the courts have held that the sale of property free from liens by a court of bankruptcy, vested with all the powers of a court of equity, is a judicial proceeding and has the same effect as a formal foreclosure in the state court. It is merely an expeditious and economical method of liquidating the debt without the cumbersome and expensive formalities pursued in foreclosure proceedings. Upon an adjudication and when elected, the trustee becomes vested with the title to all the properties owned by the bankrupt, and charged with the duty of administering the fund for the benefit of creditors. This duty is imperative and the jurisdiction of bankrupt courts, as shown by the authorities, is an exclusive one, unless the property has been previously taken over by some court of competent jurisdiction, vested

with authority to administer it. It is, however, the duty of a court of bankruptcy to have an appraisal made of the value of all the bankrupt's property and to use every reasonable means to ascertain whether, in cases of lien debts, there is a reasonable prospect of realizing a surplus for the creditors. If such probable equity is not found to exist, it becomes the duty of the bankrupt court, through its trustee, after proper resolution of creditors, to disclaim all interest in the property and surrender it to the mortgagee. At the same time, because of its exclusive jurisdiction and its duty to administer all property, even where no equity or probable equity is found to exist, a bankruptcy court should, upon petition of a mortgagee or lien creditor, proceed to sell the property free from debt, in such case charging against the proceeds the necessary costs and expenses thereof. This principle will be further referred to later on in the opinion.

2. We have examined with great care all of the South Carolina authorities relating to a construction of the recording acts and statutes of limitation of this state applicable to the question here under consideration, and particularly as to the effect of section 8864, page 1097, vol. 3, Code of Laws of South Carolina, 1932. It must be confessed that in the earlier decisions of the Supreme Court with reference to the original act, which has been amended from time to time, both as to the general effect of the statute and as to the maturity of the limitation therein provided, beginning with the premise that, as between the parties, no record was necessary to give validity to the lien, and that the recording acts constituted a curtailment or limitation of the provisions of such instruments for the protection of subsequent creditors or purchasers without notice, it was still held that an unrecorded mortgage was good as between the original parties. The original act was amended so as to require after the first day of January, 1902, that its provisions apply to all mortgages, including those executed prior to the 24th day of December, 1879, as well as those executed since that date. The constitutionality of the act, as thus amended, was challenged from time to time, but the Supreme Court was able generally to dispose of the cases without specifically deciding that question. It will be observed that there is nothing in the act itself specifically referring to the rights of subsequent creditors or purchasers for value without notice. In passing, I venture the suggestion that, if the act be construed as merely a statute of limitation, defining the time in which the remedy may be asserted, there can be no question of its constitutionality. If construed as impairing the obligation of contracts antedating the passage of the act, that question might well have arisen. As we construe the statute, it is not intended merely as a limitation upon the time in which an action may be brought, nor, as stated, a provision for recording merely for the protection of subsequent creditors or purchasers. The act specifically states: "No mortgage, or deed having the effect of a mortgage, no judgment, decree or other lien on real estate, shall constitute a lien upon any real estate after the lapse of twenty years from the date of the maturity of the same," [Code S. C. 1932, § 8864], it being provided, however, that in case of mortgages the lien may be perpetuated by noting on the record some written acknowledgment of the debt, etc. Both of the mortgages in question were executed after these provisions had been incorporated in the act, and by them there was incorporated in every mortgage of real estate a provision that the lien should expire in twenty years from the date of its maturity. When the mortgages in question were recorded, they, therefore, carried to all persons who might thereafter deal with the mortgagor, a notice that the lien would automatically expire in twenty years, unless kept alive by the indorsement required by the statute. The mortgagor and mortgagee did not and could not agree to anything else in the face of the law. The later decisions of the Supreme Court will, we think, be found fully to sustain the position taken by the referee. See particularly, Lyles v. Lyles, 71 S. C. 391, 51 S. E. 113; McSween v. Windham, 104 S. C. 508, 89 S. E. 500; Ewbank v. Ewbank, 64 S. C. 434, 42 S. E. 194. The Gantt mortgage was dated October 9, 1911, and recorded on the same date. The record did not show the maturity of the note which it secured, but did show that it bore interest from date, payable semiannually. The Memminger mortgage was dated October 14, 1910, and recorded on the same date. The maturity of this mortgage is shown to be one year after date. Whether viewed from the standpoint of notice to subsequent creditors or purchasers for value without notice, or construed independently with reference to the statute above discussed, the liens had become ineffective or had expired. The conclusions reached by the referee are correct and must be sustained. As stated in the case of Schmucker v. Sibert (1877) 18 Kan. 104, 26 Am. Rep. 765, cited in 41 A. L. R. page 828: "Whenever the mortgage is barred, the property is free from

the lien. It is, as respects the mortgage, as though the latter had never existed." The debts secured by these mortgages were created on the date of their execution. All whose debts arose thereafter were subsequent creditors, and when the mortgages expired and became as though they had never existed, even if they had remained good as mortgages between the original parties, the notice required by the statute expired with the mortgages and was as though it had never existed. See, also, 19 R. C. L., section 252, p. 465, and section 55, p. 283, and cases therein cited.

3. Upon the question of the allocation of the costs, fees, and expenses of selling mortgaged property free from lien, the decisions of the courts show considerable conflict. This has arisen, in some measure, out of the uncertainty as to the jurisdiction or extent of jurisdiction of bankruptcy courts to sell property in this manner, and the duty of the court as to the administration of such property. The recent decisions of the Supreme Court in Straton v. New, 283 U. S. 318, 51 S. Ct. 465, 75 L. Ed. 1060, and Isaacs v. Hobbs Tie & Timber Company, 282 U. S. 734, 51 S. Ct. 270, 75 L. Ed. 645, have clarified the situation so far, we think, as now to permit the statement of such definite rules as to prevent any substantial confusion in future decisions. In the case of Isaacs v. Hobbs Tie & Timber Company, supra, it is unequivocally held that the jurisdiction of a bankruptcy court over the assets of the estate is exclusive and may not be surrendered or challenged except where the property has already been taken over, as stated in Straton v. New, supra, by some other court of competent jurisdiction. It had been previously held in the case of First National Bank v. Lasater, 196 U. S. 115, 25 S. Ct. 206, 49 L. Ed. 408, that, while a trustee in bankruptcy is not bound to accept property of an onerous or unprofitable character, and in case he declines to take it, the bankrupt may assert title thereto, he is entitled to be informed of the property and have a reasonable time to elect whether he will accept it or not. In all cases of mortgaged property, it is the duty of the trustee to make this investigation, and, where the property is found to be of an onerous or unprofitable character, to disclaim and surrender it to the bankrupt, upon proper resolution of creditors. Even in such case, however, we think that the bankrupt or the lien creditor has a right to demand of the trustee the administration of the property and its sale free from liens as authorized by law, in order to avoid the more cumbersome and expensive proceeding by way of foreclosure in

the state court. In such case the reasonable costs, fees, and expenses of such sale should first be charged against the proceeds arising out of the sale. It has been held in a number of cases that these charges should not exceed the amount, in any event, which would have been incurred by foreclosure in the state court. In re Dawkins (D. C. S. C.) 34 F.(2d) 581, In re King (D. C. W. Va.) 46 F. (2d) 112, and Id. (D. C.) 46 F.(2d) 115, and cases therein cited. The case of Van Huffel v. Harkelrode, 284 U. S. 225, 52 S. Ct. 115, 76 L. Ed. 256, confirmed unequivocally the power of bankruptcy courts to sell the bankrupt's mortgaged property free from encumbrances, and the amendment of 1910 confirmed the right of the officials of a bankruptcy court to charge commissions in such cases. As far back as August 1, 1921, the writer of this opinion, in Ex parte E. C. McArthur and Mrs. Sallie D. Young, petitioners, in the matter of J. L. Estes, Bankrupt, 2 F. Supp. 576, handed down an opinion to the effect that where property covered by mortgages is sold free from liens, primarily for the benefit of the mortgagees and upon their petition, that the costs, fees, and expenses of such sale should be first chargeable against the proceeds. This decision is in harmony with that of the Circuit Court of Appeals of this Circuit in the case of Virginia Securities Corporation v. Patrick Orchards, Inc., et al., 20 F.(2d) 78, 81, 10 A. B. R. (N. S.) 113. There the court used the following language: "The general rule with regard to the expenses of foreclosure and administration in bankruptcy is to pay such expenses out of the general estate, if there is one, rather than out of the fund derived from the sale of mortgage or lien property; but where there is no general fund, * * * or where the expense has been incurred wholly for the benefit and the advantage of the mortgaged property, * .* * such expenditure is properly chargeable against it, and particularly is this true where the mortgage or lien creditor voluntarily chooses to avail himself of the administrative functions of the court in bankruptcy to realize on his security." The question has been before the court in previous cases, and in Allebach et al. v. Thomas (C. C. A.) 16 F.(2d) 853, 855, Judge Waddill, speaking for the court, in an elaborate opinion said: "This entire subject, however, is one solely within the discretion of the bankruptcy court, and it may adopt one of several courses in disposing of the property, best suited to the circumstances of the particular situation, and which it is believed will yield for those interested the best results." Sub-

sequently, the matter came before the court in Re King (D. C.) 46 F.(2d) 115, and the court said: "An examination of the authorities as to costs seems apparently well settled as to the proposition that, where there is a general fund in a bankruptcy case, that general fund must be exhausted before any part of the fund derived from the sale of property covered by liens should be used." In that case the court quoted with approval the above-quoted language used in the case of Virginia Securities Corporation v. Patrick Orchards, Inc., et al., citing numerous authorities to sustain that view. In the case of Seaboard National Bank v. Rogers Milk Products Co., Inc., et al. 21 F.(2d) 414, the Circuit Court of Appeals expressed a doubt as to whether the expense of sale should in any event be charged to the lienor if he did not consent to the same. It must be remembered that a bankruptcy court is a court of equity, in which the general rule prevails that the allocation of costs is within the discretion of the judge. It would require too much time, and, we think, serve no useful purpose to extend this opinion for a discussion of the great number of cases relating to this subject.

The record shows that in the instant case, after an appraisal of the properties and all petitions for and against the sale of the real estate by the trustee free from debt had been presented and considered, along with such petitions as prayed for a disclaimer, it was decided, without further controversy, that certain parcels of property should be disclaimed as furnishing no probable equity for the general creditors, but that all other real estate should be sold free from liens, evidently with a view of realizing a surplus for the benefit of the general creditors. The right of sale in this manner by the trustee was paramount to the right of the lien creditors, and especially so unless the resolution to sell was challenged by lien creditors as improvident or oppressive. Since there is no challenge in the instant case to the resolution thus to sell, the right must be here treated as absolute. It is evident to my mind, both from the record of the proceedings and from the decision of the referee as set forth in his opinion, that the sale of all real estate as determined by him was made primarily for the benefit of the general creditors, and not primarily in the interest of the lien creditors, although some of them joined in the petition for sale. It was, therefore, correctly held by the referee, in line with the decisions of the Circuit Court of Appeals of this Circuit, that the costs should be first paid out of the general fund, if sufficient, and not out of the mortgaged property. There is herewith submitted a statement of certain principles which may serve as a useful guide in future cases:

1. A court of bankruptcy is vested with authority to administer all property of the bankrupt, whether encumbered or unencumbered, excepting only those cases in which the right of administration of specific property has been previously acquired by another court of competent jurisdiction, in which event only the equity payable to the trustee out of the funds realized from sale shall be subject to the jurisdiction of the bankruptcy court.

2. Where specific property is subject to a valid lien, it is the duty of the trustee to make suitable investigation of the value of the property, in order to ascertain whether there is a probable equity in excess of the lien debt, and, unless such probable equity is found to exist, to enter a disclaimer upon a proper resolution of creditors.

3. If such equity or probable equity is found to exist, it is the duty of the trustee to administer the property and the jurisdiction and duty to administer is exclusively in the bankruptcy court, unless previous jurisdiction has been acquired by another court of competent jurisdiction, as above outlined.

4. Ordinarily the right of a court of bankruptcy to property subject to a lien of mortgage is paramount to that of the lien creditor, and may not be challenged except for improvidence or abuse of discretion in taking over property in which there is clearly no apparent equity.

5. Even where there is no apparent equity in excess of the lien debt and where the case justifies a disclaimer, the lien creditor should be given the privilege of availing himself of the economical and expeditious manner of liquidating the property provided by the bankruptcy laws, in which case the costs, fees, and expenses of the sale free from liens should be charged against the proceeds of sale.

6. Ordinarily where the sale is requested by the lien creditor, it is presumptively for his benefit, and all costs, fees, and expenses incident to the sale should be charged against the proceeds.

7. Where, as in the instant case, after investigation and appraisal of various lots or tracts of land covered by mortgages and other liens, the trustee and the creditors elect to disclaim as to some and exercise the right of sale as to others, and this determination has been approved by the court, it is pre-

sumed that the failure to disclaim as to specific property is due to the determination that an apparent equity exists, and that the sale is made or to be made by the trustee primarily for the benefit of the general creditors and not of the lienees. This presumption arises because of the paramount right of the bankruptcy court to determine what is to the best interest of the general creditors and its exclusive jurisdiction to administer the property in such case.

8. A bankruptcy court, being a court of equity, is clothed with a wide discretion in allocating costs, and its determination, as in this case, under the circumstances detailed should not be disturbed.

For the reasons above set out, the decision of the referee, with the modifications above outlined, must be and is in all other respects confirmed and approved.

And it is so ordered.