Common Pleas Court of Hamilton County.

SIDNEY J. NEWMAN V. THE NEWMAN MFG. CO.

Decided October 10, 1933.

*Jos. L. Meyer,* for receivers.

*Louis J. Schneider,* prosecuting attorney, *Taft, Stettinius & Hollister,* and *John L. Clippinger,* for Remington-Rand, Inc.

*Cornelius Petzhold,* and *Max Schiff,* for other claimants.

MATTHEWS, J.

This is an action by a surety against the principal debtor for indemnity, and as ancillary relief, receivers were appointed on June 3, 1932, to take custody of, manage and operate the property and business of the defendant. These equitable receivers are now in possession of a fund realized from personal property and the cause comes before the court to determine the rights of various claimants therein.

The first claim which will be considered is that of the treasurer of Hamilton county, Ohio, for the amount of the last half of the 1931, and the full year of 1932 taxes upon certain real estate, due and payable in June and December, 1932, and June, 1933, amounting to $7,706.83. From the

statement of counsel it appears that the real estate against which these taxes are levied is the factory premises in which the defendant conducted its manufacturing business, and of which the receivers took possession under the order of the court at the time of their appointment. At the time of their appointment this real estate in addition to being encumbered by a lien for those taxes, was also encumbered by a mortgage for more than one hundred thousand dollars in favor of Remington-Rand, Inc. None of the interested parties—receivers, mortgagee or county—have instituted any proceedings to sell this real estate. It has been appraised, in this action, for considerably more than the amount of the liens upon it, and there is no doubt that its value is more than sufficient to pay the first lien for taxes. However, it is claimed by the county that it has a personal claim against the defendant, as owner, for the amount of these taxes, and that such claim is entitled to priority of payment out of the fund realized from the sale of the personal property of the defendant.

Counsel for Remington-Rand, Inc., — the mortgagee — have joined with the prosecuting attorney in urging this view.

It should be stated at this point that in order to prevent a default the court authorized and the receivers paid the interest to the mortgagee during their occupancy of the premises. This was done on the theory that if the mortgaged premises were worth more than the amount of the mortgage it was to the interest of the general creditors to prevent a default; and that if the premises were worth less than the amount of the mortgage the mortgagee would have the right in a foreclosure proceeding to have a receiver appointed to collect the rents for use and occupation.

In order to dispose of the question presented it is first necessary to determine whether or not, under the statutes of Ohio, a personal obligation is created on the part of the owner to pay the taxes levied against real estate. It is the contention of counsel for the receivers that no such personal obligation is created. Neither the prosecuting attorney nor counsel for the mortgagee urge the converse position, but submit the question to the court for its decision.

It will not be necessary to review the history of the legislation in Ohio on this subject. Such history will be found in an article published in VI University of Cincinnati Law Review, 251. The conclusion to which the author of that article comes is that since 1931, at least, there has been no personal liability on the part of the owner to pay the taxes levied against his real estate, and that a personal judgment may not be rendered against him.

An examination of the statutes will disclose that the right of the state to a lien upon the real property is clearly and unmistakably set forth and ample remedies are provided for the enforcement of such lien. Section 5671, General Code, provides for the lien and all of Chapter 14, (Sections 5704 to 5727, General Code), is devoted to elaborate provisions for the enforcement of the lien. At no place is there any language imposing a personal liability upon the owner or providing for the collection of the tax through the medium of a personal judgment against him.

There are various provisions fixing the duties *inter sese* of life tenants and remaindermen, owner and lien holder, guardian and ward, personal representative and estates, agents and principals, and attorneys and client, (Sections 5680 to 5693, inc., General Code), but no where in the statutes can be found a provision making it the personal duty of the land owner to pay the real estate tax, and by Section 2658, General Code, the legislature manifested its intent not to create a personal liability upon the owner. By that section it is enacted

"When tax *other than those upon real estate specifically as such,* are past due and unpaid the county treasurer may distrain sufficient goods and chattels belonging to the person charged with such taxes, if found within the county, to pay the tax so remaining due to the costs that have accrued."

By specifically withholding the right of distraint as a remedy for the collection of tax upon real estate it seems to me clear that it was not the intention of the legislature to impose a personal liability upon the owner and was its intent to limit the remedy for the collection of the tax to the enforcement of the lien against the real estate. By this amendment to Section 2658, General Code, which was

passed in 1931, whatever implication might have been otherwise drawn from the retention of the word "distress" in Section 5678, General Code, has been rendered inadmissible. The court is confirmed in its conclusion in this respect by the opinion of the attorney general of Ohio rendered on September 21, 1933, in which he held that machinery, not constituting fixtures may not be sold by the state to satisfy delinquent real estate taxes.

Inasmuch as the legislature has expressly provided remedy by the enforcement of the lien against the real estate and has not imposed a personal liability, no such personal debt or obligation can be implied. 3 Cooley on Taxation (4th Ed.) 2626 *et seq;* 26 R. C. L. Sec. 11, 339; *Sapulpa* v. *Land,* 101 Okla. 22; 35 A. L. R. 872.

It seems to the court that the fundamental nature of a tax upon real estate precludes the implying of a personal obligation. The language of our statutes, as well as most statutes imposing real estate tax, is the language of a direct property tax and not an excise tax. Like all taxes it is imposed in consideration of protection and, inasmuch as the value of the real estate is the limit of the protection, such value should be the limit of the tax, and as the real estate is always within the jurisdiction of the taxing power, if it can not be collected from the property, there is no basis for its imposition.

In *Union Refrigerator Transit Co.* v. *Kentucky,* 109 U. S., 194, the court said:

"The power of taxation, indispensible to the existence of every civilized government, is exercised upon the assumption of an equivalent rendered to the taxpayer in the protection of its person and property. * * * If the taxing power be in no position to render these services, or otherwise to benefit the person or property taxed, * * * the taxation of such property within the domicile of the owner partakes rather of the nature of an extortion than a tax."

That language was used with reference to an attempt by a state to tax property beyond its territorial limits, but it seems to me to be clearly applicable to the situation here.

Passing then from this question we approach the contention earnestly made by counsel that the court should order these real estate taxes paid out of this fund because, as is insisted, where the right of the citizen and the right of

the sovereign, as such, conflict the latter must prevail, in other words, that it is the prerogative right of the state to have a priority. It seems to me, however, that if the conclusion already reached is correct then the sovereign acting through the legislature has not seen fit to assert a personal right against the owner of the real estate. Having the power to impose a personal liability the sovereign was under no duty to exercise it. If its purpose was to exercise the power it should manifest that purpose through the legislative department by which governmental policy is normally determined. If the legislative department has not imposed a personal obligation then the state has no such correlative right, prerogative or otherwise. If no basis exists for the rendition of a personal judgment against the owner in a direct action by the state seeking that relief, it would seem that the intervention in this case would not ennoble the tax to a high prerogative claim to be satisfied in preference to all others.

It is doubtful whether, under the laws of Ohio, a political subdivision of the state has a right to the prerogative right that attached to the crown of Englind. *Fidelity & Casualty Co.* v. *Saving Bank Co.,* 119 O. S., 124; *County Court* v. *Matthews,* 32 A. L. R. (W. Va.) 751. Regardless of this view the political subdivisions do not have this prerogative right unless it has been delegated by the state, either expressly or by implication.

By authorizing the levying of taxes upon real estate and expressly providing for their enforcement by foreclosure of the lien imposed, it seems to me that under the familiar doctrine of interpretation—*expressio unius est exclusio alterius*—it must be held that no such authority was delegated as the right to enforce the taxes by imposing a personal obligation to be satisfied out of other property of the owner.

Counsel relies strongly upon the case of *Clegg* v. *Dayton & Troy Electric Railroad Co.,* 31 N. P. (N. S.) 37 [O. L. B. & R., Sept. 25, 1933], to support his conclusion that the claim for taxes is a preferred claim. It is clear that the taxes under consideration in that case were not taxes upon real estate specifically as such. They were personal property taxes, or a tax imposed upon the defendant as a public utility.

By Sections 5415 to 5431, General Code, provision is made for the valuation of public utility property of railroads both electric and steam, and the levying of an assessment against the owner. This is done by the state public utility commission to which the railroad is required to make a report of all the property for taxation which by Section 5419, General Code, is defined to "include such utility's plant or plants and all real estate necessary to the daily operations of the public utility," and by that section and Section 5422, General Code, it is required to list separately its property including real estate not so used. By Section 5428, General Code, the commission is expressly directed to deduct the value of any real estate "owned by such public utility, if any there be, as otherwise assessed for taxation in this state." Then by Section 5425 it is provided that the property to be assessed by the commission is that defined in Section 5419, General Code, which only includes such real estate as is necessary in the daily operations of the public utility. Therefore, such real estate is not taxed *specifically as such,* but is simply included as an item of the aggregate public utility property upon which the commission is required to place an aggregate valuation for taxation purposes. The tax levied against a public utility is made by Section 5492, General Code, a personal obligation enforceable by action in the Common Pleas Court.

The tax under consideration in *Clegg* v. *Railroad Co.,* was not levied on real estate *specifically as such* and the case therefore furnishes no guide for a correct decision of the case before the court.

Finally it is contended that this case is governed by Section 8339, General Code, in which it is enacted that

"In all cases where property of an employer is placed in the hands of an assignee, receiver or trustee, claims due for labor performed within the period of three months prior to the time such assignee, receiver or trustee is appointed, shall first be paid out of the trust fund, in preference to all other claims against such employer, except claims for taxes and the costs of administering the trust."

The only requirement of this section is that the claim for taxes shall be given priority. What is the claim for taxes? The answer to that question must be found in the statutes.

Our conclusion is that the claim for taxes is the claim for a lien upon the real estate. The state, through its legislature, has asserted no right to enforce real estate taxes by subjecting personal property to their payment. If and when the real estate upon which these taxes were levied is sold, then the claim of the state will be safeguarded and out of the proceeds thereof the taxes will be paid in preference to all other claims against the fund realized from the sale.

The effect of an order directing the payment of the taxes out of the personal property in this case would be to give to the mortgage a priority of payment to that extent out of the personal property. Whatever rights a lien-holder has in the assets not covered by his lien, he certainly has no right of priority. The most that he could have would be the right to a *pro rata* distribution.

Taxes have accrued during the receivership on the personal property as well as upon the real property. The unsecured creditors must bear the burden of the tax upon the property to which they look for payment of their claims, and I fail to see any equity that would require the court, in the absence of any statute, to impose the burden of the real estate tax also upon them particularly when there is no necessity for so doing in order to collect the tax.

For these reasons the court holds that the relief sought in the intervening petition of the county treasurer is denied and his claim disallowed.

Claims for commission for negotiating certain contracts have been presented by certain agents of the defendant. These contracts were negotiated by the agents prior to the receivership and at the time of the appointment of the receivers were binding obligations of the defendant. It is the contention of these claimants that the receivers having elected to perform these contracts thereby became bound not only to perform all the terms of such contracts, but also became bound by the contract of agency to pay the agent's commission for negotiating the contracts. This seems to me to be an extension of the doctrine of adoption of contracts by receivers without any support in the authorities.

The executory contract adopted was the one with the defendant's customer. By adopting it the receivers became bound by all the terms of that contract, but by that act

they did not become bound by the terms of any other contract.

The agent having performed the service entitling him to his commission prior to the receivership continued to have that claim against the defendant regardless of whether the receivers concluded to perform the contract he had negotiated with the customer. Tardy's Smith on Receivers, (2d) 142. It had become a vested right of which he could not be deprived. The whole benefit of the labors of the agent had been received by the defendant before the receivers were appointed. It was an executed contract on the side of the agent and the only obligation undischarged was that of the defendant to pay. There was no unperformed obligation the receipt of the benefit from which by the receivers would transform the obligation from one resting upon the defendant to one resting upon the receivers under the principle of adoption by them.

The holding is, therefore, that the claims of these agents for commissions have not been adopted and that the agents are entitled only to dividends thereon as general creditors of the defendant.