**In the Matter of LUMARA FOODS OF AMERICA, INC. dba Arthur Treacher's Fish and Chips, Debtor.**

**Bankruptcy No. B82–00946–Y.**

United States Bankruptcy Court, N.D. Ohio.

June 12, 1985.

Richard Walzer, for The State of Minn., Dept. of Revenue, Tax Compliance Div., St. Paul, Minn.

Michael A. Gallo, Nadler & Nadler Co., L.P.A., Youngstown, Ohio, for debtor.

Wallace W. Walker, Jr., Baker & Hostetler, Cleveland, Ohio, for Orange-Co., Inc.

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Bankruptcy Judge.

Presented for consideration is an application for the payment of administrative expenses filed by the State of Minnesota, Department of Revenue (Minnesota or movant). The application seeks payment of $221,973.52 in post-petition sales and withholding taxes allegedly owed by the debtor. The amount sought represents an accumulation of the taxes due plus accrued penalties and interest thereon.

The debtor, joined by one of its largest creditors, Orange-Co., Inc. (Orange-Co.), has objected to the application primarily on the grounds that the movant has failed to establish its right to administrative-expense treatment of its claim and to accurately quantify its claim.

The application and objections eventually came on for hearing at which time they were taken under advisement. The court requested, and the parties have supplied, briefs and memoranda which, along with the arguments of counsel and other related exhibits, form the basis of the within findings of fact and conclusions of law.

## I.

### Statement of the Case

The case itself has been pending since July 12, 1982 when the debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code. (11 U.S.C. § 1101 et

seq., hereinafter the "Code"). The nature of the debtor's business, as a well-known fast food restaurant chain, has been extensively streamlined over that period. Many of the original company-owned stores have closed and a nucleus of profitable sites has been sold with the result that, for all intents and purposes, the expected plan of reorganization will be, according to debtor's counsel, a liquidating plan.

The closings were systematically done on a site-by-site basis, and consequently a number of the restaurants were still operating after the debtor sought relief under the Code. It is some of those sites which have generated the disputed tax claims.

According to the movant, the debtor was required by Minnesota law to collect withholding taxes from its employees and to reserve a portion of its sales receipts as sales taxes. This either was not done at all or, the collections having been made, the moneys were never paid over to the state.

Minnesota now claims that because these taxes accrued and were assessed after the filing they are entitled to administrative status under 11 U.S.C. § 503(b)(1)(B) and are payable now. In addition, the state avers that any penalties and interest arising out of these past due taxes are similarly entitled to section 503 status.

At the hearing, the principal amount of the tax claim was stipulated to by the parties at $168,927.36, leaving the court to determine:

1. Whether the post-petition withholding taxes and state sales taxes are entitled to administrative priority under 11 U.S.C. §§ 503(b) and 507(a)(1);

2. Whether the resulting penalties and interest on the above delinquent taxes are allowable under 11 U.S.C. § 502 and are entitled to the same administrative priority as may be the unpaid principal; and

3. Whether these tax claims, if found to be entitled to administrative priority, must be paid now.

## II.

### Conclusions of Law
#### A.

### Statutory Construction

The initial inquiry focuses upon the parties' dispute over the priority status of the delinquent tax claims. Each argument presents a differing view of the breadth and interaction of sections 503 and 507. To begin its own analysis, the court looks to those relevant portions of the texts of sections 503 and 507:

**11 U.S.C. § 503. Allowance of administrative expenses.**

... (b) After notice and hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

... (1)(B) any tax—

(i) incurred by the estate, *except of a kind specified in section 507(a)(6)* [1] of this title ... (Emphasis added)

**11 U.S.C. § 507. Priorities.**

(a) The following expenses and claims have priority in the following order:

(1) First, administrative expenses allowed under section 503(b) of this title

...

(6) Sixth, allowed unsecured claims of governmental units, to the extent that such claims are for—

... (C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity.

Clearly, it is the above-emphasized language which has generated the present controversy, as the express exceptions of section 503(b)(1)(B)(i), when read *in pari materia* with section 507(a)(6)(C), seemingly exclude the disputed tax claims from any administrative priority consideration. That conclusion might be sound were the court inclined to accept the debtor's premise that the phrase "except of a kind" has a meaning so plain that it cannot be judicially

---

**1.** Section 507(a)(6) was redesignated Section 507(a)(7) by the Bankruptcy Amendments and Federal Judgeship Act of 1984 (Pub.L.No. 98– 353, 98 Stat. 333). However, for the purposes of this memorandum, the prior designation will continue.

altered to produce a result contrary to that which the debtor advances.

■ However, the court is not so persuaded that the phrase "except of a kind" can or should be so broadly read. Indeed, to do so would apparently limit the administrative tax considerations to only those taxes arising under section 503(b)(1)(B)(ii) which is not in issue here. Such a result, it would appear, runs the risk of reducing a portion of the statute to a nullity. Consequently, the court will follow the well-established rule of this Circuit to the effect that whenever a court is asked to interpret statutes which, if literally read, are capable of producing anomalous results, it should look beyond the statutes for guidance in discerning their underlying legislative intent. *United States v. Stauffer Chemical Co.*, 684 F.2d 1174 (6th Cir.1982) affm'd.; 464 U.S. 165, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984); *United States v. Thompson*, 669 F.2d 1143 (6th Cir.1982) cert. denied 459 U.S. 1072, 103 S.Ct. 494, 74 L.Ed.2d 635 (1982); *Environmental Defense Fund v. Tennessee Valley Authority*, 468 F.2d 1164 (6th Cir.1972); *Wirtz v. Allen Green & Associates, Inc.*, 379 F.2d 198 (6th Cir. 1967).

### B.

*Priority Under the Bankruptcy Act*

Under the Bankruptcy Act (11 U.S.C. § 1 et seq.), the predecessor sections of sections 503 and 507 were, respectively:

**§ 62 (11 U.S.C. § 102) Expenses of Administering Estates; Unauthorized Sharing of Fees; Withholding Allowances.**

a. (1) The actual and necessary costs and expenses incurred by officers, ... in the administration of estates shall, except where other provisions are made for their payment, be ... examined and approved or disapproved by the court. If approved, they shall be paid or allowed out of the estates in which they were incurred.

**§ 64 (11 U.S.C. § 104) Debts Which Have Priority**

a. The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment shall be (1) the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate *subsequent to the filing of the petition* ... (4) taxes which became legally due and owing by the bankrupt to the United States or to any State or any subdivision thereof which are not released by a discharge in bankruptcy: *Provided, however,* (emphasis in original) that no priority over general unsecured claims shall pertain to taxes not included in the foregoing priority ... (Emphasis added)

Clearly then, those *post-petition* expenses found to be *necessary* for the preservation of the bankruptcy estate were entitled to administrative status and were provided with a first priority of distribution out of the estate assets. Whether any taxes, other than those expressly designated as fourth priority taxes, could be similarly treated was a question that was affirmatively answered by the commentators and cases alike.

*Collier* devoted extensive review to the principle that those taxes incurred by the estate after the filing of the petition were entitled to administrative status under the Act. For example, the authors noted that:

Thus the actual and necessary expenditures of bankruptcy receivers for costs of operating a business ... for taxes and for other costs incidental to the protection and conservation of the estate ... are accorded first priority by clause (1) ...

3A *Collier on Bankruptcy* para 64.102[1] (14th ed. 1975) at pg. 2080.

Since the above suggests that the "actual and necessary" expenses worthy of administrative status under section 62a(1) could include taxes, the authors further concluded that such taxes were entitled to a first priority under section 64a(1):

No attempt is made in the Bankruptcy Act to enumerate specifically all the

items of expense to which first priority is given as costs of administration. 'The actual and necessary costs and expense incurred by officers ... in the administration of estates,' to be paid or allowed under § 62a undoubtedly are given priority of payment by § 64a(1) ...

Debts incurred by the trustee in the course of operating the bankrupt's business under the supervision of the bankruptcy court are entitled to first priority as expenses of administration after an order of liquidation is entered ...

Thus claims arising from ... taxes assessed against the business *during the trustee's period of control* are entitled to such priority.

3A *Collier on Bankruptcy* para. 64.105[2] (14th ed. 1975) at pp. 2093–2096. (Emphasis added) (footnotes omitted).

The foregoing principles enunciated by the commentators were also endorsed and adopted by those cases which decided the issue of taxes as a first priority administrative expense.

In *Nicholas v. United States*, 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966) the Supreme Court was asked to decide whether interest on unpaid federal tax claims should be allowed to accumulate until the claims were paid. For its answer, the Court initially considered the fact that the payments being sought were for pre-petition, post-petition (arrangement) and post-conversion taxing periods. It then decided that the commencement of each successive period was also the cutoff date for the accumulation of interest on those taxes incurred during the preceding period. In so doing, the Court said:

The division of the proceedings in the present case into three separate periods defining the permissible accumulation of interest is supported by the threefold hierarchy of priorities for tax claims under the Bankruptcy Act. Taxes incurred in the pre-arrangement period must be

content with a fourth priority under § 64a(4) of the Bankruptcy Act. On the other hand, *taxes incurred during the arrangement period are expenses of the Chapter XI proceedings and are therefore technically a part of the first priority under § 64a(1).*[2]

*Id.* at 687–688, 86 S.Ct. at 1681–1682 (footnotes omitted) (Emphasis added).

This same pre-versus-post-petition dichotomy has been followed by the Second, Third, Fifth, Seventh and Eighth Circuits in establishing the principle that those taxes incurred during the administration of a bankruptcy estate were entitled to a first priority of distribution under the Act. *See, Pomper v. United States*, 196 F.2d 211 (2nd Cir.1952); *In re Lambertville Rubber Co.*, 111 F.2d 45 (3rd Cir.1940); *Berryhill v. Gerstel*, 196 F.2d 304 (5th Cir.1952); *In re John Horne Company*, 220 F.2d 33 (7th Cir.1955); *State of Missouri v. Earhart*, 111 F.2d 992 (8th Cir.1940).

The above decisions were bottomed on the timing of the tax assessments and were silent on the origin or nature of the taxes as affecting their administrative priority status. Indeed, taxes assessed by either local, state or federal taxing authorities were deserving of first priority treatment. *See, e.g., John Horne, supra* (first priority for past due FUTA and federal withholding taxes) and *Berryhill, supra* (first priority for county real estate and personal property taxes).

In view of the foregoing authority, the court is persuaded that under the Act, at least, it was well established that administrative status and the attendant first priority of distribution under Section 64a(1) applied to *any* post-petition expenses, including taxes of *any* kind, so long as the claimant demonstrated that such expenses were reasonable and necessary for the preservation of the bankruptcy estate.

---

**2.** The Court went on to say that taxes incurred during the arrangement period were subordinated to the expenses of the superceding liquidation period. This principle of subordinating pre-conversion administrative expenses to post-conversion administrative expenses is perpetuated under the Code at section 726(b).

## C.

*Priority Under the Bankruptcy Code*

Intensified pressure was applied to the Congress during the 1970's to reform the Bankruptcy Act. Those efforts culminated in the passage of the Code on November 6, 1978 (Pub.L. 95–598, 92 Stat. 2549). In carrying out this reformation process, both houses of Congress indicated that their purpose in drafting the new legislation was to "modernize" the then existing bankruptcy laws to accommodate and reflect current banking and commercial practices. H.R. Rep. No. 95–595, 95th Cong., 1st Sess. (1977) at pg. 3, U.S. Code Cong. & Admin. News 1978, p. 5787; S.Rep. No. 95–989, 95th Cong., 2nd Sess. (1978) at pg. 1, U.S. Code Cong. & Admin.News 1978, p. 5787. Consequently, where the Congress sought to abandon the Act as opposed to merely revising it, its intentions to do so were specifically documented in the legislative history.

The original House version of the new bill, H.R. 8200, 95th Cong., 1st Sess., (as reported by the House Committee on the Judiciary on September 8, 1977), contained the following language:

**§ 503 Allowance of Administrative Expenses**

... (b) After notice and a hearing, the court shall allow administrative expenses, ... including—

(1) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions *for services rendered after the order for relief,* and *any taxes* on, measured by, or *withheld from* such wages, salaries, or commissions ...

H.R. 8200 at pg. 383. (Emphasis added)

**§ 507 Priorities**

The following expenses and claims have priority in the following order:

(1) First, administrative expenses allowed under section 503(b) of this title ...

(6) Sixth, allowed unsecured tax claims, other than claims for fines or penalties not in compensation for actual pecuniary loss, of governmental units, to the extent that such claims are for—

... (C) taxes required to be withheld from wages, salaries, commissions ... or other payments that were paid by the debtor ... *before* the date of the filing of the petition ...

(E) excise taxes on—

(i) a transaction occurring *before* the date of the filing of the petition ...

H.R. 8200 at pp. 389–391. (Emphasis added)

The intentions behind these proposals were fully explained by the bill's sponsor so that it is clear that the only "major change from current law" regarding administrative first priority was the elimination of the priority formerly given to the referee's salary and expense fund. H.R. 95–595, 95th Cong., 1st Sess. (1977) at pg. 187. The contemplated priority for taxes was, to be sure, relegated from the fourth priority of Section 64a(4) to a lower (sixth) priority. Nonetheless, the common denominator for these sixth priority taxes, regardless of whether they were federal, state or local taxes, was that they had to have accrued, been assessed or have come due *before* the filing of the petition. *Id.* at 190–193. Consequently, at least for its initial proposal, the House plainly intended to perpetuate the administrative first priority of Section 64a(1). *Id.* at 355. Similarly, the taxing priority of Section 64a(4) was modified to expand the enumerated list of qualified taxes and was clarified to expressly require that these taxes were to be pre-petition taxes. *Id.* at 357–358.

The Senate version of the new bill, S. 2266, 95th Cong., 2nd Sess. (as reported by the Senate Judiciary Committee and the Senate Finance Committee on July 14, 1978), differed from the House proposals as follows:

**§ 503 Allowance of administrative expenses**

... (b) After a notice and a hearing, the court shall allow administrative expenses ... including—

... (1) (B) *Any taxes,* including interest thereon—

(i) incurred by the estate *on or after the earlier of the order for relief* or, in an involuntary case, the appointment of a trustee ...

(c) any fine or penalty relating to taxes referred in subparagraph (B) ...

S. 2266 at pg. 380. (Emphasis added)

§ 507 **Priorities**

(a) The following expenses and claims have priority in the following order ...

(6) Sixth, allowed unsecured claims, to the extent that such claims are for any—

(A) tax *incurred on or before the date of the filing* of the petition ...

(C) except as provided in paragraph (3) of this subsection, tax required to be collected or withheld from others and for which the debtor is liable in any capacity[3] ...

S. 2266 at 395, 398–399. (Emphasis added)

It was clearly reported that the Senate's administrative expense proposals were derived from section 64a(1) of the Act. S.Rep. No. 95–989, 95th Cong., 2d Sess. (1978) at pg. 66. That derivation sought to continue the notion that those post-petition expenses necessary for the preservation of the estate would enjoy a first priority of distribution. *Id.* The report went a step further, however, and clearly indicated that post-petition taxes, including any interest and certain penalties thereon, were also to be included as administrative expenses. *Id.* For those taxes subject to the contemplated sixth priority of section 507(a)(6), the report repeatedly emphasizes that *all* of the taxes enumerated therein apply to those wages earned or to those transactions occurring *prior* to the filing. S.Rep. 95–989 at pp. 70–73. Therefore, upon comparing the Senate version with the House proposal, ante at 814–815, it is clear that both houses agreed in substance but differed in form. Unmistakably however, they both intended to perpetuate a pre-petition/post-petition priority distinction applicable to any claim or expense, including taxes.

The compromise bill debated by both houses embodies the language which eventually became law. Nowhere in the final debate is there the slightest evidence which could fairly suggest that either house was compromising the substantive intentions of their respective bills. *See,* 124 Cong.Rec. H11047, 11095 (daily ed. September 28, 1978); 124 Cong.Rec. S17403, 17426 (daily ed. October 6, 1978).

The number of cases which have evolved since the advent of the Code that have construed taxes to be worthy of administrative priority are in fact legion. An inventory of some is enlightening with respect to the issues at bar.

■ To begin with, taxes, as any other expense of a bankruptcy estate, will be entitled to administrative status if found to be necessary for its preservation. *United States v. Redmond,* 36 B.R. 932 (D.Kan. 1984); *In re Dakota Industries, Inc.,* 31 B.R. 23 (Bankr.S.D.1983). But necessity becomes the stepchild of timing as the elevation to an administrative priority is dependent upon when the tax accrued. For, notwithstanding a defined benefit to the estate, the legislative history of the Code mandates that the date of filing controls whether a first or sixth priority will result. *In The Matter of Stroud Wholesale, Inc.,* 37 B.R. 735 (Bankr.E.D.N.C.1984); *In re Blue Ribbon Delivery Service, Inc.,* 31 B.R. 292 (Bankr.W.D.Ky.1983); *In re EMC Industries, Inc.,* 27 B.R. 696 (Bankr.S.C. 1983). Consequently, the pre-petition/post-petition distinction that triggered a section 64a(1) or section 64a(4) priority under the Act remains intact for sections 507b(1) and 507b(6) of the Code.

Additionally, it is equally clear that the source of the tax has little bearing on whether a first priority status is appropriate. For instance, it has been held that a sales tax arising out of a post-petition sale is a section 503 tax. *In re Hubs Repair Shop, Inc.,* 28 B.R. 858 (Bankr.N.D.Iowa

---

**3.** S. 2266 proposed a third priority for those withholding taxes with respect to wages earned

within ninety (90) days of the filing. *Id.* at 396.

1983). Payroll taxes arising after the commencement of a Chapter 11 case are entitled to first payment out of the estate assets. *In re Flagstaff Food Service Corp.* 29 B.R. 215 (Bankr.S.D.NY.1983). Those capital gains taxes arising out of a sale of property which occurred during the administration of an estate are section 503(b)(1)(B)(i) expenses deserving of section 507(a)(1) priority. *In re Lambdin*, 33 B.R. 11 (Bankr.M.D.Tenn.1983). In short, the above precedents clearly indicate that the broad reading the debtor gives to the exception clause of section 503(b)(1)(B)(i) is untenable. The legislative history and the cases alike convince this court that the only "kind" of tax excluded from a first priority distribution is a pre-petition tax. Clearly, the Minnesota taxes which form the basis of the disputed claim would meet a necessity test, were it argued that present law so requires.

■ It is noted that when Lumara filed its petition for relief it did not become immune to the reach of federal, state or local taxing authorities. *Swarts v. Hammer*, 194 U.S. 441, 24 S.Ct. 695, 48 L.Ed. 1060 (1904). And, in this case there is no serious debate that those restaurants operating in Minnesota came within the purview of the state's tax laws. Accepting, then, that Minnesota's demand for withholding[4] and sales taxes[5] was authorized, then payment is obviously necessary to the continued operation, and hence, preservation of the estate.

Through their post-petition operations, the Minnesota sites served two worthwhile ends for this estate. First, they continued to generate income which either increased the debtor's profits or helped to minimize its losses. Second, the continued operation of the sites enhanced their marketability and attractiveness so that for those sold by the debtor as operating restaurant locations the business viability was apparent.

■ Finding that the Minnesota tax claims are not subject to the exclusion clause of section 503(b)(1)(B)(i), the court declares them to be expenses of the administration of this estate deserving of a section 507(a)(1) priority.

### D.
*Penalties as Administrative Expenses*

The allowance of penalties as administrative expenses of the estate is specifically provided for in the Code at section 503(b)(1)(C). There, the statute reads:

... there shall be allowed administrative expenses ... including—

(c) any fine, penalty, or reduction in credit relating to a tax of a kind specified in subparagraph (B) of this paragraph ...

The statutory language has its genesis in Senate Bill S. 2266, *supra* at pg. 380. The provision was allowed to remain intact in the final legislation. The drafters could have amended or omitted the clause but they did not. That action, in the court's view, is significant as it serves to underscore the accord which both houses reached on this issue. It is an accord which the court will not disturb here.

■ Having already found that post-petition withholding and sales taxes are the kinds of taxes which are to be included as administrative expenses, the court similarly finds that any penalties assessed against those taxes are to be classified in the same manner. *Accord: United States v. Friendship College, Inc.*, 737 F.2d 430 (4th Cir.1984); *In re Stack Steel & Supply Co.*, 28 B.R. 151 (Bankr.W.D.Wash.1983)

### E.
*Interest as an Administrative Expense*

The question of allowing interest on post-petition taxes as an administrative expense has been met with varying answers. The cases are in tension in deciding whether the prohibitions of section 502(b)(2)[6] are appli-

---

**4.** See, 19 *Minnesota Statutes Annotated* § 290.92 (West Publishing Co., 1985 Supp.)

**5.** See, 19A *Minnesota Statutes Annotated* § 297A.15 (West Publishing Co., 1985 Supp.)

**6.** "Except as provided in subsections (f), (g), (h)

cable to section 503(b)(1)(B)(i) taxes. *See, In re Stack Steel & Supply Co.*, 28 B.R. 151 (Bankr.W.D.Wash.1983) (post-petition interest not allowable as an administrative expense). *Contra; United States v. Friendship College, Inc.* 737 F.2d 430 (4th Cir.1984). The parties resorted to an extensive review of the precedents deciding the issue, but in light of the Code's clear and concise legislative history, the court will forego such an examination.

■ It is, instead, significant to note that the only reference to interest as an administrative expense is found in the Senate bill's version of section 503(b)(1)(B)(i). *Ante* at pp. 814–815. The express provision was later deleted during the compromise debates on the final bill which eventually became law. That a deletion, instead of a revision, occurred is no legislative oversight. It represents a "deliberate and significant" indication of the drafters' intent following the debates. *Stack Steel, supra* at pg. 156. Where there were two opposing views on post-petition interest, there evolved only one. Unmistakably, it was the House's exclusionary version of section 503(b)(1)(B)(i) which prevailed. The allowance of interest on post-petition taxes therefore would require the reinsertion of statutory language which was clearly left out beforehand. Such practice is more properly the role of the legislature than the court's. As a result, our inclination is to follow *Stack Steel, supra* and declare that interest on post-petition taxes is not an administrative expense under section 503(b).

### F.

#### Timing of Payment

Much of the oral argument relating to the dispute was devoted to the issue of when the debtor should have to pay the administrative expenses of the estate. Obviously, Minnesota would prefer to receive payment now rather than at some later time. The debtor, however, contends that payment now would be inequitable to other administrative claimants and would not be in the best interests of the creditors as a whole.

The equitable goals of a pro-rata distribution would, it seems to the court, be thwarted if Minnesota's administrative claims were to be paid in full now while other bona fide administrative claimants are left wanting. Such a policy clearly would not serve us well in cases such as this when the amount of liquid assets in the estate would barely clear the amount of the the state's claim.

While the court is inclined to allow an administrative priority, it is not disposed to order payment to the potential prejudice of other first priority claimants. Payment of these claims is better deferred, perhaps until the Chapter 11 plan is eventually confirmed, so that whatever remains of this estate may be equally distributed according to law.

### III.

#### Conclusion

The evidence before the court consisting of the testimony, briefs, related exhibits and arguments of counsel has persuaded the court to find that:

1. The claims of the State of Minnesota for payment of the principal of those withholding and sales taxes which became due and owing after the filing of this Chapter 11 petition on July 12, 1982 are administrative claims entitled to a first priority of distribution under section 507(a)(1);

2. Those penalties, authorized by the relevant laws of the state, for the nonpayment of the above delinquent tax claims are also administrative claims entitled to a first priority of distribution;

and (i) of this section if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

.    .    .    .    .

(2) such claim is for unmatured interest; ..."

818

3. Any interest charges, authorized by the relevant laws of the state, due and owing on the above unpaid principal are not allowed as an administrative expense of this estate; and

4. Payment of the unpaid principal and related penalties due and owing on the Minnesota tax claims should be deferred until such time as distributions are ready to commence under a confirmed Plan of Reorganization or until such earlier date as the court may hereafter order.

An order consistent with the findings contained in this Memorandum will be entered forthwith.