In the Matter of The **MANSFIELD TIRE & RUBBER COMPANY, Pennsylvania Tire and Rubber Company of Mississippi, Inc., Pennsylvania Tire Company, Debtors.**

**Bankruptcy No. 679–01238.**

United States Bankruptcy Court, N.D. Ohio.

Dec. 7, 1987.

438

H. Jeffrey Schwartzberg, of Benesch, Friedlander, Coplan & Aronoff, Cleveland, Ohio, and David Simiele, of Krugliak, Wilkins, Griffiths & Dougherty, Co., L.P.A., Canton, Ohio, for cotrustees.

James DeWeese, Mansfield, Ohio, for Richland County Treasurer.

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Chief Judge.

Presented for consideration is a Motion for Partial Summary Judgment, filed on behalf of Mansfield Tire & Rubber Company, Pennsylvania Tire and Rubber Company of Mississippi, Inc. and Pennsylvania Tire Company (collectively, Debtors), seeking a determination that post-petition real estate taxes constitute an in rem obligation attaching to the assessed real estate and not an administrative expense pursuant to Bankruptcy Code (11 U.S.C. §§ 101, et seq.) Section 503(b) that becomes a personal liability of the estate. The Richland County Treasurer (Treasurer) filed for simultaneous consideration his own Cross Motion for Summary Judgment seeking a determination that the real estate taxes are administrative expenses entitled to first priority distribution pursuant to Bankruptcy Code Section 507(a)(1).

Mansfield Tire & Rubber Company (MTR) and the Pennsylvania Tire and Rubber Company of Mississippi, Inc., filed petitions for relief under Chapter 11 of Title 11 of the United States Code on October 1, 1979. The Pennsylvania Tire Company filed for similar relief on November 1, 1979. Debtors continued in the operational management of their businesses and properties as debtors in possession pursuant to Bankruptcy Code Sections 1107 and 1108. On August 11, 1981, Samuel Krugliak (the Trustee) was appointed Trustee for MTR pursuant to Bankruptcy Code Section 1104. On December 30, 1985, a consolidated liquidating plan of reorganization for MTR and its affiliated debtor corporations was confirmed, under which Samuel Krugliak and Richard L. Phillips were appointed co-Disposition Assets Trustees (the co-Trustees).

MTR, a manufacturer and marketer of motor vehicle tires, headquartered and having its principal place of business in the city of Mansfield, Richland County, Ohio, owned and continues to own certain parcels of real estate in Richland County. Beginning in 1982, with MTR's operations having ended, the Trustee began disposing of its real estate. The Trustee initiated eight adversary proceedings and one contested matter seeking the court's approval of such disposition. Each of the adversary complaints sought authority to sell the property free and clear of any interest therein of third parties. The Treasurer was a named defendant in all eight of the adversary proceedings.

Of the eight adversary proceedings initiated by the Trustee, six of the proposed sales were actually closed by the parties. In these six adversary proceedings the Treasurer was found in default of answer to the Trustee's complaints. The orders that followed these adversary proceedings authorized the sale of the real estate free and clear of liens with any valid and subsisting liens attaching to the proceeds realized from the sales. In the two adversary proceedings in which the Treasurer did file an answer, in one he asserted an interest in Debtors' property in the amount of $301,-

556.67 for delinquent real property taxes, penalties and interest. In the other adversary proceeding, the Treasurer merely asserted an interest in the property to the extent of real property taxes due.

The Treasurer, on April 6, 1984, filed a proof of claim in the amount of $304,411.63 for delinquent real property taxes. The document claimed priority status. On August 12, 1986, the Treasurer filed a request for payment of the real property taxes and interest as an administrative expense. The co-Trustees responded, objecting to the April 6, 1984 proof of claim and the August 12, 1986 request for payment of an administrative expense and moved for summary judgment. By order entered on March 26, 1987, the court found that the April 6, 1984 proof of claim pertained only to post-petition liabilities and was disallowed as a proof of claim. However, the court further found that the document constituted a request for payment of an administrative expense under Section 503 of the Bankruptcy Code. The court also concluded that interest accrued on these post-petition taxes was not an allowable administrative expense under Section 503(b)(1)(C) of the Bankruptcy Code, as had been urged by the Treasurer.

On May 22, 1987, the co-Trustees filed their partial summary judgment motion described at the outset and on June 8, 1987, the Treasurer filed a response and the cross-motion for summary judgment likewise mentioned on page 1 of this Memorandum. Both parties also presented arguments on the significance of letters and telephone conversations between the Treasurer and counsel for the co-Trustees, debating whether those communications amounted to equitable estoppel as to the issue of administrative expense treatment for the post-petition real estate taxes.

After the filing of numerous briefs and affidavits, a hearing was held on July 23, 1987 on the parties' respective motions for summary judgment. Also as a part of this proceeding is the co-Trustees' Motion to Strike the Affidavit of Terry Hott. Mr. Hott's affidavit was filed by the Treasurer and relates to the valuation of the real property in question. The Treasurer has also moved for reconsideration of this court's order of March 26, 1987 insofar as it finds that interest on post-petition real estate taxes is not allowable as an administrative expense under Bankruptcy Code Section 503. Both the Treasurer and the co-Trustees have subsequently filed appropriate responses to these motions.

In the interest of judicial economy, all of these pending motions will be dealt with below.

## I

### Reconsideration of a Portion of the March 26, 1987 Order

■ The Treasurer has asked this court to reconsider its ruling of March 26, 1987, wherein it determined that interest on post-petition taxes is not recoverable as an administrative expense. The grounds for the motion are that this court's ruling conflicts with that of another United States Bankruptcy Court for the Northern District of Ohio, in *In re Thompson*, 67 B.R. 1 (Bankr. N.D.Ohio 1984); and that the previous ruling produces substantial injustice to the county by permitting the tax money to be used interest-free by the debtors and co-Trustees.

This court in *In re Lumara Foods of America, Inc.*, 50 B.R. 809 (Bankr.N.D. Ohio 1985) analyzed the legislative history of Section 503(b)(1)(B)(i) and determined that post-petition interest was not to be included as an administrative expense. That determination was not reached lightly or without recognition of a split of authority on the issue. The court deliberately chose in *Lumara* to follow what it perceived to be the legislative intent behind the statutory provision. It will serve no purpose to burden this Memorandum with a repetition of our analysis of the legislative history. A sister court of equivalent jurisdiction has indeed reached a contrary conclusion and in so doing has also noted the division of opinion on the issue. *In re Thompson, supra*, at 2. It is for appropriate appellate authority to determine which of these views should prevail in this District.

Nothing in the Treasurer's Memorandum in Support of his motion or in the cases cited by him persuades this court to alter its previous ruling on this issue and therefore the Motion for Reconsideration of Interest on Post–Petition Taxes will be denied.

## II

### *Motion to Strike Affidavit*

At the oral argument on the cross-motions for summary judgment, the co-Trustees sought and were granted leave to file a Supplemental Affidavit of Samuel Krugliak in Support of Motion for Summary Judgment. The Treasurer requested and was granted leave to submit responsive affidavits and did so within the time limits set by the court. The co-Trustees have now filed a Motion To Strike the responsive affidavit of the Treasurer.

For the reasons set forth below, the court concludes that the co-Trustees' motion is well taken.

■ The affidavit in question is that of one Terry Hott, self-described as a supervisor of the real estate section of the Richland County Auditor's office and a deputy county auditor. The affiant relates his background in real estate appraisal work and indicates that he was employed by private appraisal firms from 1967 through 1981; that his present employment began in 1981; and that his promotion to supervisor took place "[a]bout 3 years ago ..."

By an earlier order of this court, Mr. Krugliak, as Trustee, was authorized to employ a demolition company to destroy the debtors' primary buildings in Richland County, Ohio. Mr. Hott, in his affidavit, opines that in 1979, at the filing of the bankruptcy (and at a time preceding Mr. Hott's employment with the Richland County Auditor) the debtors' buildings had a fair market value of $7,220,830.00 and the land was worth $306,610.00. At the time of Mr. Krugliak's appointment as Trustee, Mr. Hott believes, according to his affidavit, that the building value had dropped to $3,829,740.00, but that the land value had appreciated to $315,540.00.

The basis of Mr. Hott's opinion testimony is unclear, although the last mentioned building valuation appears on an appraisal effective January 1, 1981 and prepared by an independent appraisal firm. Mr. Hott avers that he is "familiar with the real property which has been owned in Richland County by ... MTR ... between 1979 and the present ..." and states that he has "examined the records of the Auditor's office relating to the improvements located on that land and the value of that land and improvements." He concludes that in his role as "custodian of the Richland County Auditor's records ..." copies of independent appraisal reports which he attaches to his affidavit are "true copies."

Mr. Hott's efforts to bootstrap his opinion and the documents to which he alludes to the status of probative evidence will not prevail against the co-Trustees' attack which is based on Fed.R.Civ.P. 56(e), made applicable in these proceedings by Bankruptcy Rule 7056, and which requires affidavits to "be made on *personal* knowledge [and] shall set forth such facts *as would be admissible in evidence* ..." (emphasis added). "[A]n administrator's affidavit which contains only hearsay and legal conclusions ... is not entitled to consideration because it does not contain evidence admissible at trial." *Liberles v. County of Cook,* 709 F.2d 1122, 1129 (7th Cir.1983), citing Fed.R.Civ.P. 56(e).

The issue is not what the county auditor's records reflect with respect to MTR's property values in Richland County during the period in question about which Mr. Hott, in his supervisor/records custodian role, could no doubt testify. Rather, to the extent the inquiry is ultimately deemed relevant, the focus is upon that valuation as fixed by some person or persons competent to give an opinion which would be admissible under the Federal Rules of Evidence. Mr. Hott's qualifications as an expert real estate appraiser are hardly established by his affidavit. Suffice it to say that this court would not permit him to testify as an expert on the strength of the training, background, skills and experience he recites therein. What is clearly perceived is

his reliance on other persons' opinions who may or may not themselves be qualified to testify under Fed.R.Evid. 702. "Expert opinions ordinarily cannot be based upon the opinions of others whether those opinions are in evidence or not." *American Key Corp. v. Cole National Corp.*, 762 F.2d 1569, 1580 (11th Cir.1985) (citations omitted).

### III

Attention may now be focused upon the basic motions for summary relief presented by both parties.

At bottom, the issue is whether the Treasurer's recovery is limited by the nature and scope of whatever lien he may have held on the real estate in question. An obvious further issue is the extent of the recovery, if any, to which the Treasurer may be entitled.

### A

A starting point for analysis is to be found in the relevant portions of Sections 503 and 507:

11 U.S.C. § 503 **Allowance of administrative expenses.**

. . . . .

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

. . . . .

(B) any tax—

(i) incurred by the estate, except a tax of a kind specified in section 507(a)(7) of this title;

. . . . .

11 U.S.C. § 507 **Priorities**

(a) The following expenses and claims have priority in the following order:

(1) First, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.

. . . . .

(1)

The first question that arises is whether the real estate taxes were incurred "by the estate." The co-Trustees argue that because Ohio's real estate taxes are in rem in nature, they are not so incurred. The court is not so persuaded.

28 U.S.C. § 960 provides:

Any officers and agents conducting any business under authority of a United States Court shall be subject to all federal, state and local taxes applying to such business to the same extent as if it were conducted by an individual or corporation.

Ohio Rev.Code § 5709.01(A) subjects "All real property in this state ... to taxation." Ohio Rev.Code § 323.41 provides that "each person holding lands shall pay the tax assessed thereon each year."

In *Swarts v. Hammer*, 194 U.S. 441, 24 S.Ct. 695, 48 L.Ed. 1060 (1904), the Supreme Court, in dealing with estate property tax, held that because the property still received governmental protection during its administration, this protection is the basis for liability of the estate for taxation. Also, as was stated by the Supreme Court in *Nicholas v. United States*, 384 U.S. 678, 86 S.Ct. 1674 n. 27, 16 L.Ed.2d 853 (1966):

The liability of the trustee for ... taxes results from his succession in interest to the title of the debtor in possession, who, as an officer of the bankruptcy court, was clearly subject to such taxes under the provision of 28 U.S.C. Sec. 960. ... In general, the trustee himself is under a duty to seek out and pay taxes accruing against the bankrupt estate during the bankruptcy itself.

When a debtor files its petition for relief, neither it nor its successors become immune to the reach of federal, state or local taxing authorities. *In re Lumara Foods,* 50 B.R. at 816. To permit the co-Trustees to avoid the payment of these taxes, solely because of the filing of a bankruptcy petition, would enable them to administer the property tax free, something the Bankruptcy Code was not designed to do.

The court therefore concludes that the taxes imposed on the real estate of MTR are indeed obligations incurred by the bankruptcy estate.

(2)

 Are, then, the real estate taxes administrative expenses which will receive a first priority distribution under 11 U.S.C. § 507(a)(1)?

As both parties have pointed out and the court has determined through its own research, this area of the bankruptcy law is lacking in any thorough analysis of the issue. It appears that only three courts have dealt with the issue of post-petition real estate taxes as an administrative expense priority: *In re Carlisle Court, Inc.,* 36 B.R. 209 (Bankr.D.Colo.1983); *In re Stack Steel and Supply Company,* 28 B.R. 151 (Bankr.W.D.Wash.1983); and *In re Stroud Wholesale, Inc.,* 37 B.R. 735 (Bankr.E.D.N.C.1984); reversed on other grounds 47 B.R. 999 (D.C.1985). Of these three opinions, only *In re Carlisle Court, Inc.* actually analyzed Bankruptcy Code Sections 503 and 507 in regard to real estate taxes. The issue in *Carlisle,* however, was whether the post-petition real estate taxes should be accorded a priority of payment pursuant to subsection (a)(1) or (a)(7) [1] of Bankruptcy Code Section 507. *Id.* 36 B.R. at 214. In the instant proceeding, the co-Trustees do not argue that the taxes receive priority distribution under Section 507(a)(7). Rather the whole thrust of the co-Trustees' argument is that the real estate taxes should receive no priority distribution, be it under Section 507(a)(1) or Section 507(a)(7).

After a review of the prior court decisions and for the reasons set forth below, the court concludes that post-petition real estate taxes are an administrative expense entitled to first priority treatment under Section 507(a)(1).

The language of Section 503(b)(1)(B)(i), as has been shown, provides that any tax incurred by the estate, except the tax of a kind specified in Section 507(a)(7), shall be allowed as an administrative expense. The taxes covered by Section 507(a)(7) have been determined to include only those incurred pre-petition. *In re Lumara Foods, supra; In re Carlisle Court, Inc., supra.* Therefore, the taxes in the instant proceeding are not subject to the exclusion of Section 503(b)(1)(B)(i). The remaining question then is whether post-petition real estate taxes fall into the category included in Section 503(b)(1)(B)'s "any tax."

From the court's research, it is clear that the source of the tax has little bearing on whether a first priority status is appropriate. *See, In re Hubbs Repair Shop, Inc.,* 28 B.R. 858 (Bankr.N.D.Iowa 1983) (post-petition sales taxes); *In re Flagstaff Food Service Corporation,* 29 B.R. 215 (Bankr. S.D.N.Y.1983) (post-petition payroll taxes); *In re Lambdin,* 33 B.R. 11 (Bankr.M.D. Tenn.1983) (post-petition capital gains taxes). As was stated by this court in *In re Lumara Foods:* "The legislative history and the cases alike convince this court that the only 'kind' of tax excluded from a first priority distribution is a pre-petition tax." 50 B.R. at 816.

The language chosen by Congress in Section 503(b)(1)(B)(i) is clear and unambiguous. The words "any tax ... except of a kind specified in Section 507(a)(7)" can have no other meaning except to include *all* taxes not specifically excluded.[2] Had it been

---

1. U.S.C. § 507(a)(7) provides in relevant part:
 Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—
 (A) a tax on or measured by income or gross receipts— ...
 (B) a property tax assessed before the commencement of the case and last payable without penalty after one year before the date of filing of the petition; ...

2. "Any" has been defined by Webster's New Collegiate Dictionary (1981) to be:

1. One or some indiscriminately of whatever kind: a: one or another taken at random, b: every—used to indicate one selected without restriction; 2: one, some, or all indiscriminately of whatever quantity: a: one or more —used to indicate an undetermined number or amount, b: all—used to indicate a maximum or whole, c: a or some without reference to quantity or extent; 3 a: unmeasured unlimited in amount, number, or extent, b: appreciably large or extended; any person or persons: anybody; any thing or things; any

Congress' intent to exclude certain taxes from having first priority distribution, it clearly had the ability to do so, as evidenced by the exclusion of Section 507(a)(7) taxes.

Section 507(a)(7) encompasses pre-petition real estate taxes.[3] This can only strengthen the argument that Congress was aware of real estate taxes and that it had the ability to exclude post-petition real estate taxes from being an administrative expense as it had done with pre-petition real estate taxes.

Accordingly, the court concludes that post-petition real estate taxes are properly expenses of administration within the meaning of Section 503(b)(1)(B). Therefore, these taxes are entitled to administrative priority under the distribution plan of Section 507(a)(1).

**B**

The final determination to be made is the amount of the administrative expense the Treasurer is entitled to recover.[4]

In so determining, the court is governed by the laws of the state imposing the tax. As was stated in *In re Estes*, 2 F.Supp. 576, 577 (D.C.W.D.S.C.1921), "The liability for taxes must be determined by the law of the state unless in conflict with some federal law or decision of the Supreme Court." *See also, Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (mortgagees' rights in bankruptcy determined under state law). As there is no federal law or Supreme Court decision on this issue, this court will be guided by the taxing laws of Ohio. *See also* 28 U.S.Sec. 960 *supra* at pg. 11.

As previously noted, Ohio Rev.Code § 5709.01(A) subjects all real property in the state to taxation. In Ohio, the taxes run with the land and no personal judgment is rendered against the owner. *Bank*

*and Trust Company v. Bolce,* 165 Ohio St. 201, 135 N.E.2d 382 (1956). The amount of the tax is therefore limited to the value of the property. *Newman v. Newman Manufacturing Company,* 31 Ohio N.P. (n.s.) 273 (Hamilton County, 1933). As was stated by the court in *Newman:*

> Like all taxes it is imposed in consideration of protection and, inasmuch as the value of the real estate is the limit of the protection, such value should be the limit of the tax.... *Id.* 31 Ohio N.P. (n.s.) at 276.

*See also, Bank and Trust Co. v. Bolce, supra* (real estate taxes due are a charge against the real estate, no personal judgment against owner).

The court therefore concludes that the amount of the administrative expense the Treasurer has for post-petition real estate taxes is limited to the value of the specific real estate involved. For the court to hold otherwise would be to grant the Treasurer a windfall merely by the intervention of the bankruptcy proceedings. For if the bankruptcy petition had not been filed by MTR, the Treasurer could only look to the real estate for the payment of the taxes and the amount of his recovery would be limited to the value of that property. The filing of the bankruptcy petition should not and does not change the rights of the Treasurer. *See, Butner v. United States, supra.*

As for the value of the specific real property, there is no better measure of its worth than the amount received upon its disposition. In the instant proceedings, the real estate in question has been the subject of eight adversary proceedings and one contested matter. Of those eight adversary proceedings, six resulted in final sales. The two remaining parcels of real estate have not as yet been sold. Therefore, as to the real property taxes related to the parcels involved in the six closed transactions and the contested matter, the Treasurer

---

part, quantity, or number; to any extent or degree: at all.

3. See footnote 1 *supra.*

4. 11 U.S.C. § 505(a)(1) provides in relevant part: ... the court may determine the amount or legality of any tax, any fine or penalty relating

to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

has an administrative claim limited to the purchase price. As for the two remaining parcels of real property, the amount of the administrative expense will be determined upon their sale.

In thus coming to its conclusion that the post-petition real estate taxes in question are entitled to administrative expense priority, it is unnecessary for the court to reach a decision on the issue of estoppel.

An order in accordance herewith shall issue.

### ORDER

This matter came on to be heard on Cross Motions for Partial Summary Judgment. Also before the court were Motions for Reconsideration and to Strike the Affidavit of Terry Hott.

For the reasons set forth in the accompanying Memorandum of Decision the court holds as follows:

(1) The Motion for Reconsideration filed on behalf of the Richland County Treasurer is DENIED.

(2) The Motion to Strike the affidavit of Terry Hott filed on behalf of Samuel Krugliak and Richard L. Phillips, co-Disposition Assets Trustees, is GRANTED.

(3) The Richland County Treasurer has an administrative expense claim entitled to first priority for post-petition real estate taxes.

(4) The amount of the administrative expense claim of the Richland County Treasurer for post-petition real estate taxes is limited to the value of the real property to which the taxes attach.

(5) The value of the real property is to be determined by the sale price received upon its disposition.

IT IS FURTHER ORDERED that a status conference be held on February 4, 1988 at 9:15 a.m. to determine and resolve any matters remaining in the instant proceeding in the light of the court's Order of March 26, 1987 and this Order.